UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOEY DEAN JARVIS,

        Petitioner,

                                CASE NO. 2:06-cv-12829
v.                            JUDGE BERNARD A. FRIEDMAN
                                MAGISTRATE JUDGE PAUL J. KOMIVES

CARMEN PALMER,

        Respondent.

_____/


## REPORT AND RECOMMENDATION


*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     E.    *Jury Instruction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     F.    *Juror Removal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     G.    *Prosecutorial Misconduct* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
               a. Prosecutorial comment on defendant's failure to produce evidence . . . . . . . . . . . . . 16
               b. Prosecutorial civic duty argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     H.    *Ineffective Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
               a. Failure to Object to Prosecutorial Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . 21
               b. Failure to seek a jury instruction on a lesser cognate offense . . . . . . . . . . . . . . . . . 21
     I.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

I.       RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.      REPORT:

A.       *Procedural History*

1.       Petitioner Joey Dean Jarvis is a state prisoner, currently confined at the Deerfield Correctional Facility in Ionia, Michigan.

2.       On September 5, 2003, petitioner was convicted of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, a felony punishable by imprisonment in a state prison not more than 10 years, following a jury trial in the Macomb County Circuit Court. On October 6, 2003, he was sentenced to a term of 12 to 120 months' imprisonment.

3.       Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.       THE ASSISTANT PROSECUTOR'S COMMENTS DURING CLOSING ARGUMENT WERE A DIRECT AND DELIBERATE VIOLATION OF THE DEFENDANT'S FIFTH AMENDMENT RIGHT TO REMAIN SILENT

II.      THE PROSECUTOR'S CLOSING ARGUMENT IN WHICH HE TOLD THE JURY THAT IT WAS THEIR DUTY TO FIND DEFENDANT GUILTY WAS UNFAIRLY PREJUDICIAL SO THAT DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL

III.     DEFENDANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FIRST INSISTED THAT THE COURT INSTRUCT THE JURY ON THE LESSER OFFENSE OF AGGRAVATED ASSAULT AND THEN WITHDREW HIS REQUEST IN DEFERENCE TO THE PROSECUTOR'S ARGUMENT THAT THE COURT NOT GIVE SUCH AN INSTRUCTION TO THE JURY

IV.      DEFENDANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL, THEREBY REQUIRING THAT HIS CONVICTIONS BE REVERSED AND HIS SENTENCE VACATED AND THAT THIS

MATTER BE REMANDED TO THE TRIAL COURT FOR A NEW TRIAL

V.      THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DEFENDANT'S REQUEST THAT A SPECIAL INSTRUCTION BE GIVEN TO THE JURY ON THE ISSUE OF CONSENT

VI.     THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REMOVING A JUROR FROM THE JURY FOR FAILURE TO DISCLOSE ON VOIR DIRE THAT SHE WAS A VICTIM OF DOMESTIC VIOLENCE, EVEN THOUGH SHE STATED THAT SHE COULD BE FAIR AND IMPARTIAL AND DEFENDANT WANTED HER TO REMAIN ON THE JURY

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Jarvis*, No. 251720, 2005 WL 839483 (Mich. Ct. App. 2005) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these six issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order; Justice Kelly indicated she would reverse and remand the case to the circuit court for a new trial. *People v. Jarvis*, 474 Mich. 956, 706 N.W.2d 742 (2005).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on June 26, 2006. As grounds for the writ of habeas corpus, he raises the same claims he raised in the state courts.

6.      Respondent filed his answer on May 1, 2007. Respondent contends that petitioner's claims are barred by reason of procedural default. Respondent also contends that petitioner has failed to show that petitioner's counsel was ineffective when he failed to make arguments or seek jury instructions that were not consistent with state law or the defense theory. Respondent further contends that the trial court did not abuse its discretion when it declined to instruct the jury on the defense of consent and removed a juror for failing to disclose when asked on *voir dire* that she was a victim of domestic violence.

B.   *Factual Background Underlying Petitioner's Conviction*

Petitioner Joey Dean Jarvis was convicted of assaulting his girlfriend Vickie Lynn Lewis. The incident took place inside Ms. Lewis's home on May 18, 2002.

According to Ms. Lewis, 45, who testified for the prosecution, she had been dating petitioner for about seven months before the incident, and petitioner had been living with her for around three months. *See* Trial Tr., Vol. II, at 38. Ms. Lewis testified that on the day of the incident, she and petitioner went drinking together and visited two bars. *See id.* At the second bar, according to Ms. Lewis, the petitioner began ignoring her and playing pool. *See id.* at 40. Upset, Ms. Lewis left the bar and went to sleep in the truck in which the couple had arrived. *See id.* When petitioner returned to the truck, he angrily and loudly accused Ms. Lewis of being unfaithful. Petitioner, persisting in his accusations, began driving the truck, but became lost, so Ms. Lewis got behind the wheel. *See id.* at 41. Ms. Lewis tried to take petitioner to his mother's house, but petitioner refused, and Ms. Lewis brought petitioner to her home instead. *See id.*

When the two arrived at Ms. Lewis's home, according to Ms. Lewis, petitioner continued to loudly accuse her of infidelity. *See id.* Concerned that petitioner would wake the neighbors, Ms. Lewis, who weighed 125 pounds, shouldered petitioner through the door to her home; petitioner fell into the dining room table. *See id.* at 51. When petitioner continued yelling, Ms. Lewis hit petitioner in the stomach with her fists. *See id.* at 52. Petitioner responded by locking one arm around Ms. Lewis's neck and striking her face repeatedly with the other fist, so that she suffered serious injuries to her eyes, nose, jaw, teeth, and neck. *See id.* at 46-53. Petitioner released her when she indicated that she had to use the bathroom; where she immediately called for help from her mobile phone. *See id.* at 44.

When the police arrived, they found Ms. Lewis waiting outside the home covered in blood; petitioner was inside, drowsy and disoriented. *See id.* at 59-61. Police found the inside of Ms. Lewis's home in disarray, and discovered blood on the floor, walls, and furniture. *See id.* at 61. Ms. Lewis was taken to the hospital. *See id.* at 63. After petitioner was booked at the police station, petitioner was also taken to the hospital for treatment of a swollen left hand. *See id.*

C.      *Procedural Default*

Respondent first contends that petitioner's first and second claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims at trial. Even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits.  Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his counsel was ineffective for failing to raise these claims at trial.  If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  And whether counsel was ineffective depends, in part, on the underlying merits of the defaulted claims.  Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.

However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D.

Mich. 2002) (Tarnow, J.).

E.    *Jury Instruction*

Petitioner contends that he is entitled to habeas relief because he was denied a fair trial when the trial court declined to instruct the jury on the defense of consent. The trial court was not fundamentally unfair when it declined to instruct the jury on the defense of consent, as the common law defense of consent to criminal assault does not justify or excuse conduct which tends to lead to serious bodily harm.  In Michigan, the defense of mutual fight is available in criminal cases where the affray would otherwise be an assault only insofar as it may negate a specific intent, such as the intent to do great bodily harm. *People v. Sherman*, 14 N.W.2d 22, 24 (Mich. App. 1968). Petitioner did not expressly pursue the defense of mutual fight at trial. Even if the common law consent defense had been available, no reasonable jury could have concluded from Ms. Lewis's testimony that she consented to the level and severity of violence that petitioner visited on her face and neck. In addition, the  trial court did instruct the jury on the defense of self-defense, which allowed the jury to effectively consider petitioner's theory that the force petitioner used was justified under the circumstances.

1.    *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged

on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

2.      *Analysis*

Because the Court is reviewing the Michigan trial court's decision to refuse the instruction for error, the Court should consider Michigan common law regarding consent as of September 2003. In Michigan, consent is a defense to assault. *See People v. Worrell*, 340 N.W.2d 612, 622 (Mich.1983) ("Assault and consent are mutually exclusive. There can be no assault without proof of force or threat thereof. [C]onsent . . . is a defense to every charge of assault") (*overruled by People v. Starks*, 701 N.W.2d 136 (Mich. 2005)). Although the Michigan Supreme Court in *Worrell* uses general language to describe the consent defense in the context of criminal sexual assault, *Worrell* essentially refers to consent as where the individual acknowledges and permits the conduct that does not ordinarily lead to serious bodily harm but that would, absent consent, constitute assault (e.g., a medical operation, physical contact in a sports setting, sexual contact between adults). *See id.*

Courts generally recognize that consent is not a defense where the otherwise criminal assault involves a threat of serious physical harm, and consequently a breach of the public peace, as in a

mutual fight. *See* 4 Am.Jur., Assault and Battery, Sec. 83, 89; C.J.S., Assault and Battery, § 90; *c.f. Taylor v. State* 214 Md. 156, 159 (Md. 1957)(finding consent no defense in the case of "criminal assault which tends to bring about a breach of the public peace"); *Banovitch v. Com.*, 196 Va. 210, 219 (Va. 1954)(finding consent no defense "where the peace and dignity of the State are involved"). In Michigan, mutual fight is not a defense to a criminal assault charge except as it may negate a specific intent. *See Sherman*, 14 N.W.2d at 24; *People v. Horb*, 1997 WL 33330914 at *2 (Mich.App. 1997). The defense of consent appears to have no history in cases involving domestic violence criminal assault in Michigan.

Even if Ms. Lewis could be described as constructively consenting to the violent encounter by initiating it, no reasonable jury could have concluded that Ms. Lewis consented to the level of violence to which petitioner resorted, which resulted in lasting injuries to Ms. Lewis' face and neck.

For the purposes of this case, the consent defense appears functionally similar to the defense of self-defense. Through the self-defense instruction, the jury at petitioner's trial was instructed regarding petitioner's basic theory of the case: that Ms. Lewis initiated the violence and that the injuries she suffered were justified as a result. Accordingly, the trial court's decision to allow an instruction on self-defense should weigh against a finding that petitioner's trial was fundamentally unfair because the jury was not instructed on the theory of consent.

The Court should find that because the consent defense does not appear to be available in petitioner's circumstances, because Ms. Lewis' injuries were out of proportion to any altercation she may have initiated, and because the trial court did allow the jury to be instructed on the defense of self-defense, petitioner was not deprived of a fair trial by the trial judge's refusal to allow an instruction on the defense of consent.

F.      *Juror Removal*

Petitioner contends that the trial court committed reversible error when it removed a juror during deliberations, when that juror revealed that she had a history as a victim of domestic violence, and when that juror had not revealed that history when asked directly during *voir dire*.

1.      *Clearly Established Law*

The Sixth Amendment guarantees a criminal defendant the right to a trial by an impartial jury. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury"); *Duncan v. Louisiana*, 391 U.S. 145, 147-49 (1968). The defendant is entitled to a panel of impartial, "indifferent" jurors. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

Whether a trial court has seated a fair and impartial jury is a question of fact, and involves an assessment of credibility. *See Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000)(*citing Patton v. Yount*, 467 U.S. 1025, 1038 (1984)).  A state court's finding on the impartiality of a juror or a jury is a factual finding, and a habeas petitioner has the burden of proving otherwise by convincing evidence. *See Gall*, 231 F.3d at 334. On habeas review, a court considers whether there is "fair support in the record" for the state trial court's determination. *Patton*, 467 U.S. at 1038. Determinations of fact in a state court proceeding are subject to the statutory presumption of correctness in federal habeas corpus proceedings. 28 U.S.C § 2254(e). The trial court is best suited to determine the credibility and demeanor of the juror in controversy, so "the trial court's resolution of such questions is entitled, even on direct appeal, to 'special deference.'" *Patton*, 467 U.S. at 1038; *see also Marshall v. Lonberger*, 459 U.S. 422, 850 (1985)(quoting *Sumner v. Mata*, 455 U.S. 591 (1982))(insisting on "high measure of deference" for state trial court determinations of fact regarding credibility and demeanor).

2. *Analysis*

The Court should find fair support in the record for the trial court's decision to remove the juror that petitioner contends was improperly removed. The record shows that the juror in question, Juror 226, did not accurately respond to questions during the *voir dire*, and the trial court removed her from the jury on that basis and replaced her with an alternate. The trial court removed Juror 226 during the course of jury deliberation when she revealed that she had been the victim of domestic violence, when she had not answered questions accordingly during the *voir dire*. That Juror 226 was the victim of domestic violence is a sad and deeply personal fact of her own history, and the Court may sympathize with her reluctance to divulge that fact in response to an open question to all the jurors. However, the interest of both parties in a fair and impartial jury demands that jurors give accurate answers to questions during *voir dire*, even when they involve the intimate details of the jurors' personal lives.

During deliberations at petitioner's trial, the foreperson submitted a note to the judge reading as follows:

> Judge, during our deliberations it's come to the jury's attention that a juror was the victim of a domestic violence, with no criminal charges filed. This was not declared during the jury selection.

Trial Tr., Vol. II, at 127. The foreperson was summoned and gave the following account:

> As we continued our deliberations in this trying to evaluate and come up with an honest answer, the one person seemed to be stuck, stuck, stuck on the same identical item and eventually in a cross communication and challenge she just blurted it right out that yes, well, I've been involved in a domestic violence with boyfriend or whatever it was. And then the immediate reaction of the rest of us was why wasn't that declared in here during the . . . jury selection process . . . And her answer was, 'Well, they didn't ask me so I didn't tell them.' Another person cross-countered that table and said wait a minute. The judge's questions when he went like this said did all of you hear my questions. You've all been asked the same thing as we kept replacing people and her position seemed to be you didn't ask me so why tell you.

12

Now, it seems to appear that this is causing us a problem to be able to reach a verdict because she is somewhat stuck in her attitude about the generalities of the whole case.

*Id.* at 131-2. Juror 226 was summoned and questioned:

> THE COURT: First of all, were you the victim of something like a domestic violence?
> JUROR NO. 226: Yes.
> THE COURT: Any charges filed?
> JUROR NO. 226: No.
> THE COURT: Did we ask you that question?
> JUROR NO. 226: You did not ask me that question.
> THE COURT: Did I ask you if you've been the victim of a crime?
> JUROR NO. 226: Yes.
> THE COURT: Okay. Did you feel that having had that experience that it's any kind of a problem for you to judge this case fairly rather than say a drunk driving case or a property crime case?
> JUROR NO. 226: No. Actually, I believe I can see both sides of the issue.

*Id.* at 135-136. The previous day, during the jury selection process, the jury as a whole was asked

a series of questions by petitioner's counsel, Mr. James Rooney.

> MR. ROONEY: As you've probably guess (sic), this involves a boyfriend girlfriend situation, so I want to ask if any of you have ever been a victim of domestic violence regardless of whether or not criminal charge (sic) were filed? No one?

Trial Tr., Vol. I, at 56. Juror 226 did not answer Mr. Rooney's question. Subsequently, still during

the jury selection process, Juror 226 was asked several direct questions.

> THE COURT: You ever been a victim of a crime?
> JUROR NO. 226: No.
> . . .
> THE COURT: You listen to all the questions yesterday?
> JUROR NO. 226: Yes, I did.
> THE COURT: Anything jump out at you where we should know about something?
> JUROR NO. 226: No.

Trial Tr., Vol. II, at 9. After Juror 226's history as a victim of domestic violence emerged, the trial

judge initially indicated to counsel that "the easy thing to do would be to leave her on there," but

added that because the inaccurate answers provided by Juror 226 implicated issues of domestic violence at the center of the case, "for people to respect the process I don't think you can condone this kind of thing." Trial Tr., Vol. II, at 140. On a motion from the prosecution, and over petitioner's objection, the court removed Juror 226 from the jury. The court reasoned, in part,

> It's a fact that this is essentially a domestic violence case she did not - she did not answer the question accurately, if not truthfully. If she had answered the question there certainly would have been follow-up questions from myself or from counsel. It may be that it's a person the defendant would not want on there. It may be it's a person the prosecutor would not want on there or vice versa. That was not able to be explored through the jury selection process. . . . They're given an oath to answer these questions truthfully and honestly. Without attributing any specific intent to [Juror 226] or defining what the normal meaning of intent is, she has not answered the question accurately and, therefore, did damage to the process. And I think we have to - not we, this court I think it's in the best interests of justice in this case that this jury to have her removed (sic) from the jury.

*Id*. at 141. The trial court was in the best position to determine from a direct interview with Juror 226 whether she was capable of remaining on the jury and handling petitioner's case impartially, and on that basis the Court should allow significant deference to the trial court's ultimate determination. Petitioner, on the other hand, has presented no evidence to satisfy his burden of establishing that a partial jury was convened as a result of the removal of Juror 226. The Court should be satisfied that because there exists fair support on the record for the trial court's decision, petitioner's right to an impartial jury under the Sixth Amendment was not violated.

G.     *Prosecutorial Misconduct*

Petitioner contends that at trial the assistant prosecutor deprived him of a fair trial when he remarked to the jury, "Now the testimony on this case was fairly clear cut. I mean, you really had one version of what happened and that was [from] the victim, Vickie Lewis." Trial Tr., Vol. II, at 84. The prosecutors' remark was not an unfair reference to defendant's failure to give evidence.

Petitioner further contends he was denied a fair trial because the assistant prosecutor remarked to the jury, "Don't come back on a lesser offense. I don't think that's doing your duty as jurors, because I think that the evidence is certainly sufficient to find him guilty of the principal charge and I ask you to do your duty as jurors and return that verdict." *Id.* at 98. The Court may agree in hindsight that the prosecutor's words during closing argument at trial were poorly chosen, but they do not rise to the level of reversible prosecutorial misconduct. An objection to these remarks would not have affected the outcome of the proceeding, so petitioner's attorney was not constitutionally defective for failing to object.

1.    *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

2.	*Analysis*

	a.	*Prosecutorial comment on defendant's failure to produce evidence*

Although a prosecutor's indirect comment on a defendant's failure to testify or produce evidence, such as a statement that the prosecutor's evidence is uncontradicted, may be unconstitutional, not every such comment is impermissible. Rather, the constitutionality of the indirect reference depends on the circumstances of the case. *See, e.g.*, *Lockett v. Ohio*, 438 U.S. 586, 594-95 (1978). A prosecutor may comment on a defendant's failure to call witnesses or offer other evidence to support his factual theories so long as the prosecutor's comment does not implicate a defendant's right not to testify. *See United States v. Bautista*, 23 F.3d 726, 733 (2d Cir. 1994); *United States v. Williams*, 990 F.2d 507, 510 (9th Cir. 1993); *United States v. Sensi*, 879 F.2d 888, 900 (D.C. Cir. 1989); *United States v. Dahdah*, 864 F.2d 55, 59 (7th Cir. 1988). In order to conclude that the prosecutor's remarks amounted to an impermissible comment on petitioner's failure to testify, the Court "must find one of two things: that the prosecutor's manifest intention was to comment upon the accused's failure to testify or that the remark was of such a character that the jury would naturally and necessarily take it to be a comment of the failure of the accused to testify." *United States v. Robinson*, 651 F.2d 1188, 1197 (6th Cir. 1981) (internal quotations omitted); *accord Byrd v. Collins*, 209 F.3d 486, 533-34 (6th Cir. 2000); *Lent v. Wells*, 861 F.2d 972, 975 (6th Cir. 1988). The Sixth Circuit has established a four factor balancing test to be used in determining the constitutionality of a prosecutor's indirect reference to a defendant's failure to testify: (1) whether the comments were intended to reflect on the accused's silence or were of such a character that the jury would necessarily take them as such; (2) whether the remarks were isolated or extensive; (3) whether the evidence of guilt was otherwise overwhelming; and (4) the

nature and effect of any curative instructions given by the court. *See Byrd*, 209 U.S. at 533-34; *United States v. Moore*, 917 F.2d 215, 225 (6th Cir. 1992); *Lundy v. Campbell*, 888 F.2d 467, 478 (6th Cir. 1989); *Lent*, 861 F.2d at 975.

After applying these factors to petitioner's claim, the Court should conclude that the prosecutor's comment did not violate petitioner's constitutional rights. First, there is no indication that the comments were manifestly intended to comment on petitioner's exercise of his right not to testify, or that the jury took them as such. On the contrary, the prosecutor was commenting not that defendant had failed to contradict Ms. Lewis's testimony with his own testimony, but that the evidence the prosecution had provided was the only evidence. At no point did the prosecutor suggest that petitioner should have taken the stand in his own defense, or that the petitioner bore any burden of proof. Thus, the comment was not manifestly intended to comment on petitioner's exercise of his right to remain silent or his failure to produce evidence, nor would it have been taken as such by the jury.

As to the remaining factors, the prosecutor's comment was isolated. Meanwhile, there was substantial evidence of petitioner's guilt. As the prosecutor indicated, Ms. Lewis's evidence regarding the events of May 18, 2002 was not disputed, and was supported by evidence from police and hospital personnel as well as photographs taken immediately after Ms. Lewis arrived at the hospital. With respect to the fourth factor, because the prosecutor's remark was not directed towards petitioner's failure to testify, it was not necessary for the trial court to give a curative instruction. However, in its instructions to the jury, the court specifically noted that the prosecution bears the burden of proof, that petitioner was presumed innocent, and that petitioner had no obligation to produce any evidence. Instructing the jury, the court said in part,

> A person accused of a crime is presumed to be innocent. . . . The defendant is not required to prove his innocence or to do anything. . . . . Every defendant has the absolute right not to testify. When you decide the case you must not consider the fact that he did not testify. It must not affect your verdict in any way.

Trial Tr., Vol. II, at 108). These instructions, even though given during the general jury instructions and not at the time of the prosecutor's statements, weigh in favor of finding that the prosecutor's comment was not unconstitutional.

In short, the prosecutor's comments were not manifestly intended to comment on petitioner's silence or suggest that petitioner had the burden of coming forward with any evidence, nor would they have been interpreted by the jury as doing so. Further, the comments were isolated relative to the length of the trial, there was significant evidence against petitioner, and the court properly instructed the jury regarding the burden of proof, petitioner's right to remain silent, and the evidence upon which its verdict should be based.

In these circumstances, the Court should conclude that petitioner was not deprived of his right to due process and a fair trial by the prosecutor's observation to the jury that Ms. Lewis's testimony was uncontradicted.

### b. Prosecutorial civic duty argument

Petitioner contends that the assistant prosecutor improperly appealed to the jury's sense of civic duty when he told the jury, "Don't come back on a lesser offense. I don't think that's doing your duty as jurors, because I think that the evidence is certainly sufficient to find him guilty of the principal charge and I ask you to do your duty as jurors and return that verdict." Trial Tr., Vol II, at 98. While the Court may agree that a prosecutor should generally avoid using the word "duty" when appealing to the jury, the Court should disagree that the prosecutor's remarks to the jury were so unfair as to cast a shadow on the entire trial.

An improper "civic duty" argument is one which "encourages the jury to convict the defendant based upon principles of protection of the community and encourages them to ignore the evidence in the case." *United States v. Mejorado-Soto*, No. 94-2404, 1995 WL 764115, at *2 (6th Cir. Dec. 27, 1995) (per curiam). Here, the prosecutor did neither of these things. The prosecutor did not suggest that the jury had to convict petitioner to protect the community, and neither did the prosecutor invite the jury to ignore evidence. In the remarks in question, the prosecutor was merely attempting to emphasize to the jury the legitimate principle that if the jury accepted the prosecution's version of the evidence, then the jury was bound to return a guilty verdict on the principal charge.

In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, the Court should consider (1) the degree to which the remarks had a tendency to mislead the jury and to prejudice the accused; (2) whether they are isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; (4) and the overall strength of the evidence against the accused. *See Pritchett v. Pitcher*, 117 F.3d at 964.

With regard to the first factor, any confusion that may have resulted from the prosecutor's remarks regarding the jury's duty is mitigated by the trial court's specific instructions. The trial court directed the jury, in part, "The lawyers' statements and arguments are not evidence . . . You are the only judges of the facts and you should decide this case from the evidence . . . [I]t is your job to decide what the facts of the case are." Trial Tr., Vol II, at 109-111. Second, the prosecutor's references to the jury's duty were isolated, appearing only in a short section of the prosecutor's lengthy closing argument. Third, the prosecutor's remarks do not appear to be part of a deliberate design, but rather appear accidentally in the course of the prosecution's attempt to convey that the

evidence is sufficient to establish guilt regarding the principal charge. Fourth, the evidence already strongly mitigated in favor of petitioner's guilt.

Given trial court's specific instructions regarding the jury's duty, the isolated and accidental nature of the prosecutor's remarks, and the strong weight of evidence against petitioner at trial, the Court should conclude that the prosecutor's remarks did not deprive petitioner of due process and a fair trial.

H.      *Ineffective Counsel*

Petitioner contends that he was denied his right to effective counsel under the Sixth Amendment because his attorney (a) failed to object when the assistant prosecutor remarked to the jury that Ms. Lewis's testimony was undisputed, and failed to object when the assistant prosecutor charged the jurors with a "duty" to convict, as well as (b) failed to seek a jury instruction on a lesser cognate offense.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence"); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing

on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2. *Analysis*

a. *Failure to Object to Prosecutorial Misconduct*

Petitioner contends that his counsel was ineffective for failing to object to the improper prosecutorial statements upon which he seeks habeas relief. As discussed above, petitioner's underlying prosecutorial misconduct claims are without merit, and thus he cannot show that his counsel was ineffective. *See White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial); *Rich v. Curtis*, No. 99-CV-73363, 2000 WL 1772628, at *8 (E.D. Mich. Oct. 24, 2000) (Friedman, J.) (same)

### b. Failure to seek a jury instruction on a lesser cognate offense

Petitioner contends that he was deprived of a fair trial when his counsel failed to insist on a jury instruction on the cognate lesser offense of aggravated assault, and instead accepted the prosecutor's argument that aggravated assault was not a lesser offense. The Michigan Court of Appeals reviewed petitioner's claim and held that, as a matter of state law, an instruction on a cognate lesser offense would have been inappropriate:

> Aggravated assault is a cognate lesser offense of assault with intent to do great bodily harm less than murder. An instruction on a lesser offense is appropriate only if it is a necessarily included lesser offense, not a cognate lesser offense. *People v. Reese*, 466 Mich. 440, 446; 647 N.W.2d 498 (2002). Therefore, we hold that defendant was not entitled to an instruction on aggravated assault, see *People v. Cornell*, 466 Mich. 335, 359; 646 N.W.2d 127 (2002), and defense counsel was not required to advocate a meritless position. *People v. Riley*, 468 Mich. 135, 142; 659 NW2d 611 (2003).

> In addition, we hold that defendant failed to overcome a strong presumption that counsel's alleged error constituted sound trial strategy. Riley, supra, p 140. Indeed, the defense theory at trial was that defendant was not guilty because he acted in self-defense or that he, at most, committed an assault and battery because he was intoxicated. An aggravated assault instruction might have reduced the chance of an acquittal or an assault and battery conviction. See, generally, *People v. Sardy*, 216 Mich.App 111, 116; 549 N.W.2d 23 (1996). We will not substitute our judgment for that of counsel regarding matters of trial strategy, nor will we assess counsel's competence with the benefit of hindsight. *People v. Rockey*, 237 Mich.App 74, 76-77; 601 N.W.2d 887 (1999). Also, that counsel's strategy did not work does not render its use ineffective assistance of counsel. *People v. Kevorkian*, 248 Mich.App 373, 414-415; 639 N.W.2d 291 (2001).

*Jarvis*, 2005 WL 839483 at *3. In a footnote, the Michigan Court of Appeals further explained,

> A cognate offense is one that contains an element not found in the greater offense. *People v. Cornell*, 466 Mich. 335, 345; 646 N.W.2d 127 (2002). An element of aggravated assault is the infliction of a serious or aggravated injury. MCL 750.81a. Serious or aggravated injury for purposes of this statute includes injury that causes disfigurement. *People v. Norris*, 236 Mich.App 411, 415 n 3; 600 N.W.2d 658 (1999); *People v. Brown*, 97 Mich.App 606, 611; 296 N.W.2d 121 (1980). Assault with intent to do great bodily harm, MCL 750.84, requires no infliction of an actual

> injury, aggravated or otherwise. *People v. Parcha*, 227 Mich.App 236, 239; 575
> N.W.2d 316 (1997). Because aggravated assault contains an element not found in
> assault with intent to do great bodily harm, aggravated assault is a cognate lesser
> offense of assault with intent to do great bodily harm. *People v. Mendoza*, 468 Mich.
> 527, 532 n 4; 664 N.W.2d 685 (2003).

*Id.* at *3, n.2. In analyzing petitioner's ineffective assistance of counsel claims, this expression of state law is binding on this court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action."). Because petitioner was not entitled to a jury instruction on a cognate lesser offense as a matter of Michigan law, petitioner's counsel was not constitutionally defective when he failed to seek an instruction on a cognate lesser offense.

I.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives

PAUL J. KOMIVES

UNITED STATES MAGISTRATE JUDGE

Dated: 7/17/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 17,l 2008.

s/Eddrey Butts

Case Manager